IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KENNETH ROGERS** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **CIVIL NO. 10-8-GPM** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Respondent.** | ) | |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge**:

On July 22, 2010, United States District Judge Michael J. Reagan of the Southern District of Illinois ordered that Petitioner Kenneth Rogers's petition under 28 U.S.C. § 2241 be construed as an action seeking relief under 28 U.S.C. § 2255. The action was then transferred to the undersigned judge, and that § 2255 petition for relief is currently before the Court.

In 2006, Petitioner Rogers was sentenced by this Court after pleading to and being found guilty of the offenses of making counterfeit United States currency (Count 1), bank fraud (Count 2) and aggravated identity theft (Count 3). Mr. Rogers was sentenced to 24 months in prison for aggravated identity theft to run consecutive to 46 months imposed upon Mr. Rogers stemming from Counts 1 & 2 of his Information.[1] *United States v. Rogers*, So. Dist. Ill. Case No. 3:06-cr-30065, Doc. 14.

On January 4, 2010, Mr. Rogers filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the mandatory consecutive two-year sentence imposed on him by the

---

[1] Aggravated identity theft is a violation of 18 U.S.C. § 1028A. Section 1028A provides a mandatory term of two years in prison for a defendant who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."

Court based on a subsequent change in the law following his conviction (Doc. 1). After carefully reviewing his petition, Judge Reagan concluded that Mr. Rogers was not entitled to § 2241 relief, but that he may be entitled to relief pursuant to 28 U.S.C. § 2255.[2] Accordingly, after advising Mr. Rogers of the consequences of amending his petition, Judge Reagan issued an order construing Mr. Rogers' petition under § 2241 as a petition for relief under § 2255. (Doc. 7).[3]

## BACKGROUND

On May 4, 2006, Mr. Rogers pleaded guilty to each of the three charges in the Information. *United States v. Rogers*, Case No. 3:06-cr-30065. Count 3 of the Information (aggravated identity theft) specifically charged that between January 1, 2006 and March 8, 2006, Mr. Rogers created "fraudulent payroll checks" using "personal identification numbers and financial institution account and routing numbers in order to cause the checks to appear authentic." (Doc. 1). In pleading guilty, Mr. Rogers signed a written stipulation of facts providing the following: first, that Mr. Rogers had "used a means of identification of another person during and in relation to the act constituting Bank Fraud;" and second, that he had used a home computer to "create unauthorized payroll checks purporting to be issued by Grossman Iron and Steele[sic]" allegedly drawn from the company's account and containing "personal identification numbers, financial institution account and routing numbers, as well as the personal identification numbers obtained from others who would cash the checks on behalf of Rogers." (Doc. 7).

---

[2] Rule 4 of the Rules Governing Section 2254 Cases in United States District Court provides that upon preliminary consideration by the district court judge, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

[3] Pursuant to Judge Regan's re-characterization of Mr. Roger's petition under 28 U.S.C. § 2241as a petition for relief under 28 U.S.C. § 2255, the proper respondent in this cause is the United States of America.

The plea agreement further provided that Mr. Rogers waived his right to pursue either a direct appeal or collateral review subject to several exceptions. (Doc. 6). One such exception included a "subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit, which is declared retroactive by those Courts, and which renders the defendant actually innocent of the charges covered herein." *Id*.

On May 4, 2009, the Supreme Court resolved a circuit split in *Flores-Figueroa v. United States*, narrowing the interpretation of 18 U.S.C. § 1028A by construing the statute's knowledge requirement as extending to the "of another person" element of the offense. 556 U.S. 646, 657, (2009). Section 1028A provides a five-year term of imprisonment for anyone who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification *of another person* or a false identification document." 18 U.S.C. § 1028A(a)(1) (emphasis added). Thus, after *Flores-Figueroa*, to convict a defendant of aggravated identity theft, the Government must prove not simply that a defendant invented a false identification; but that the defendant knew that the "means of identification" he or she unlawfully transferred, possessed, or used, in fact, belonged to "another person." *Flores-Figueroa*, 556 U.S. at 657, 129 S.Ct. at 1894. This requires a defendant to know that he or she has assumed the identity of a "real person" and "not simply a purely fictitious creation not tied to any person." *United States v. Aslan*, 644 F.3d 526, 550 (7th Cir. 2011).

Mr. Rogers claims the United States Supreme Court decision in *Flores-Figueroa* invalidates his conviction and sentence on Count 3 because the Government never established or identified a victim, and because he lacked specific knowledge of any such victim during the conduct for which he was convicted. Therefore, Mr. Rogers contends his conduct did not result in a violation under Section 1028A(a)(1). In support of this claim, he contends the Government referenced the use of personal identification numbers, but failed to disclose said numbers. Mr. Rogers alleges the Court's

decision in *Flores-Figueroa* made the conduct for which he was convicted non-criminal, and that he is actually innocent of the charge for which he was convicted.

The Government argues *Flores-Figueroa* does not require that an actual victim or personal identification numbers be listed within an Information. To the contrary, the Government contends Federal Rules of Civil Procedure 5.2 and 49.1 require that personal identification numbers be redacted. The Government alleges Mr. Rogers's case is a "classic example of identity theft," as evidenced by his admissions in the Stipulation of Facts entered into by Mr. Rogers at the time of his plea (Doc. 7).

Section 2255 motions generally must be filed within a year of the date on which the judgment of conviction becomes final, subject to several exceptions. 28 U.S.C. § 2255(f). A new right recognized by the Supreme Court after a petitioner's conviction becomes final is one such exception. *Id.* (One-year limitation period runs from the latest of "the date on which the judgment of conviction becomes final . . . [or] the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."). *See also Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion) (holding a "new rule" of criminal procedure should not be applied retroactively on collateral review after a petitioner's conviction becomes final unless the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe;" or the rule is a "watershed" rule of criminal procedure implicating the fundamental fairness and accuracy of the proceeding). One cognizable ground for relief under Section 2255 is a challenge made by a federal prisoner that his or her sentence was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a); *United States v. Carraway*, 478 F.3d 845, 849 (7th Cir. 2007) ("[Petitioner's] lead argument, that his sentence is

unconstitutional in light of the Supreme Court's 2005 opinion in *Booker*, obviously relies on new precedent, but the argument could properly be pursued . . . only if it relied on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.") (citing *United States v. Booker*, 543 U.S. 220, (2005)). Therefore, a habeas petitioner may allege as a ground for Section 2255 relief that his sentence is unconstitutional in light of a new rule of criminal procedure made retroactively applicable to cases on collateral review, provided that his motion is filed within a year of the date on which the right asserted was initially recognized by the Supreme Court.

## ANALYSIS

I. **TIMELINESS**

Mr. Rogers filed his motion on January 4, 2010, which is more than a year after his conviction became final. Therefore, Mr. Rogers' motion is untimely under § 2255(f)(1). However, § 28 U.S.C. 2255(f)(3) provides that the year deadline for filing a § 2255 petition may begin at "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." In the instant case Mr. Rogers relies on the Supreme Court's reinterpretation of the knowledge requirement of 18 U.S.C. § 1028A set out in *Flores-Figueroa*. Since this Court finds in the foregoing analysis that *Flores-Figueroa* announced a new rule of substantive criminal law and is therefore retroactively applicable to all final convictions, the defendant has one year from the date of the decision, May 4, 2009, to file his § 2255 petition. Mr. Rogers' motion was filed with a year of the *Flores-Figueroa* decision, and thus it is timely.

II. **RETROACTIVITY**

The new rule asserted in *Flores-Figueroa* is retroactively applicable to cases on collateral

review. *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007) ("A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'") (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)) (alterations in original). The Supreme Court has included as a category of substantive rules "decisions that narrow the scope of a criminal statute by interpreting its terms." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). One example of a rule narrowing the scope of a criminal statute was discussed in *Bailey v. United States*, which held that convictions for "use" of a firearm under 18 U.S.C. 924(c) require proof of a defendant's "active employment of the firearm." 516 U.S. 137, 144 (1995). *See also Bousley v. United States*, 523 U.S. 614, 621 (1998) ("[I]t would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in *Bailey* in support of his claim that his guilty plea was constitutionally invalid") (finding petitioner failed to establish cause and remanding for finding of actual innocence).

  Because *Figueroa* narrows the scope of the criminal aggravated identity theft statute, it therefore applies retroactively to cases on collateral review. *See Schriro*, 542 U.S. at 351 ("New *substantive* rules generally apply retroactively," including "decisions that narrow the scope of a criminal statute by interpreting its terms[.]") (emphasis in original). *See also Rogers v. Hollingsworth*, 2010 WL 2680806 (S.D. Ill 2010) at *3 ("It appears that the Supreme Court's decision in *Flores-Figueroa* may have created a 'newly recognized' statutory right which is retroactive to cases on collateral review, and, therefore, Petitioner has one year from the date that *Flores-Figueroa* was decided (May 24, 2009) to pursue relief pursuant to § 2255."); *Short v. United States*, 2009 WL 3698431 (E.D. Mo. 2009) at *14 ("The Supreme Court's decision in *Flores-Figueroa* appears to qualify as a new substantive rule, because it narrows the scope of 18 U.S.C. §

1028A(a)(1) by interpreting the word 'knowingly' to require the government to prove the defendant knew the means of identification that he unlawfully transferred, possessed, or used belonged to another person."); *United States v. Venancio-Dominguez*, 660 F.Supp.2d 717, 721 (E.D. Va. 2009) ("[I]t would appear that the Supreme Court's decision in *Flores-Figueroa* would qualify as a substantive rule because it narrows the scope of 18 U.S.C.§ 1028A(a)(1) by interpreting the word "knowingly.").

### III.  PROCEDURAL DEFAULT

*Bousley v. United States* sets out the proper framework for analyzing Mr. Rogers's claim. There, a petitioner pled guilty and failed to challenge his guilty plea on appeal. *Bousley*, 523 U.S. at 616-17. The United States Supreme Court later narrowed the statute under which he was convicted, and the petitioner sought to invalidate his guilty plea through a Section 2255 motion. 523 U.S. at 617. The Supreme Court held that the petitioner could challenge his plea based on the narrowing of the statute but that, because he did not attack his guilty plea on appeal, the claim was procedurally defaulted and the petitioner had to show that his claim should be heard despite the procedural default: "Though petitioner's claim is not *Teague*-barred, there are nonetheless significant procedural hurdles to its consideration on the merits . . . [w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent.'" 523 U.S. at 621-22, (*See id.* at 619-20) ("In *Teague*, we held that 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced,' unless the new rule 'places certain kinds of primary, private individual conduct beyond the power of the criminal law to prescribe,' or could be considered a 'watershed rul[e] of criminal procedure.'") (quoting *Teague*, 489 U.S. at 310-11)

(alterations in original) (internal citations omitted).

Therefore, a defendant who has procedurally defaulted yet wishes to collaterally attack his conviction or sentence on the basis of a retroactive Supreme Court decision must demonstrate either (1) cause for the default and actual prejudice, or (2) actual innocence. The cause and prejudice standard requires not only that a petitioner demonstrate "some objective factor external to the defense" that impeded his efforts to raise the issue earlier, *Coleman v. Thompson*, 501 U.S. 722, 753 (1992), but also that the error alleged "worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). *See also Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) ("[Petitioner] must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.") (emphasis in original) (internal quotation marks omitted). Alternatively, a petitioner may demonstrate that "constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent.'" *Bousley*, 523 U.S. at 623 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish actual innocence, the petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (internal quotations omitted). Only upon such a showing will a petitioner be entitled to have his defaulted claim considered on its merits. *Bousley*, 523 U.S. at 624.

### A.    Cause

A habeas petitioner cannot establish cause for his failure to raise an issue on direct appeal if the reason for his failure is that it would have been futile for him to do so under then-existing precedent: "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (internal quotations omitted). *See*

*also Mankarious v. United States*, 282 F.3d 940, 943 (7th Cir. 2002) ("[T]he fact that an argument was unacceptable at a particular time does not constitute cause for failing to raise it."). Mr. Rogers did not pursue on direct appeal any claim that he lacked knowledge that the means of identity he employed belonged to another person. To the extent Mr. Rogers could argue as cause for his procedural default the fact that, at the time his conviction was final, existing precedent did not require proof of knowledge that the stolen means of identity belonged to an actual person, his argument must fail. While the Supreme Court has held that a claim "so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default," *Bousley*, 523 U.S. at 622, the issue here was by no means novel at the time Mr. Rogers was convicted.

Prior to the Supreme Court's decision in *Flores-Figueroa,* the First, Ninth and D.C. Circuit Courts of Appeals had considered the knowledge requirement of Section 1028A(a)(1) and concluded it extends to the "of another person" element of the offense.[4] *See United States v. Godin*, 534 F.3d 51 (1st Cir. 2008); *United States v. Miranda-Lopez*, 523 F.3d 1034 (9th Cir. 2008); *United States v. Villaneuva-Sotelo*, 515 F.3d 1234 (D.C. Cir. 2008). Each court rejected the assertion that the word "knowingly" should be read as modifying only the verbs following it, and the D.C. Circuit further observed that "the Model Penal Code adopts as a general principle of construction a rule under which, absent evidence to the contrary, the mens rea requirement encompasses all material elements of an offense." *Villaneuva-Sotelo*, 515 F.3d at 1239 (citing Model Penal Code § 2.02(4) (1985)).

In the instant case, Mr. Rogers pleaded guilty to aggravated identity theft in May of 2006.

---

[4] The Fourth, Eighth and Eleventh Circuits were the only to consider and reject this proposition. See *United States v. Mendoza-Gonzalez*, 520 F.3d 912, 915 (8th Cir. 2008), *cert. granted, judgment vacated*, 129 S.Ct. 2377 (2009) and *abrogated by Flores-Figueroa v. United States*, 556 U.S. 646 (2009); *United States v. Hurtado*, 508 F.3d 603, 610 (11th Cir. 2007) (per curiam), *cert. denied*, 128 S.Ct. 2903 (2008), *abrogated by Flores-Figueroa v. United States*, 556 U.S. 646 (2009) ; *United States v. Montejo*, 442 F.3d 213, 217 (4th Cir. 2006), *cert. denied*, 127 S.Ct. 366 (2006), abrogated by *Flores-Figueroa v. United States*, 556 U.S. 646 (2009).

He did not claim to lack specific knowledge of a victim at the time of sentencing or on direct appeal. Rather, in a written stipulation of facts signed and submitted to the Court by Mr. Rogers on May 4, 2006, Mr. Rogers admitted to using "a means of identification of another person" in the commission of bank fraud. *United States v. Rogers*, Case No. 3:06-cr-30065, Doc. 7. The Stipulation further provided that Mr. Rogers had forged checks issued by and drawn from an account held by Grossman Iron and Steel containing personal identification and financial institution account routing numbers, and also that the checks contained "personal identification numbers obtained from others who would cash the checks on behalf of Rogers." (Doc. 7).

At the time of Mr. Roger's conviction, however, challenges to convictions for aggravated identity theft under Section 1028A made on the basis that "knowledge" was required had also been filed and ruled on in the Fourth Circuit:

> [Defendant] claims, however, that he had no knowledge that numbers on those documents had actually been assigned to other people. This lack of specific knowledge was the basis for [defendant]'s trial defense and is the only issue in this appeal. He argues that section 1028A requires such knowledge.

*United States v. Montejo*, 442 F.3d 213, 214 (4th Cir. 2006), *cert. denied*, 127 S.Ct. 366 (2006) (holding conviction for aggravated identity theft did not require defendant to have known the identification employed actually belonged to another person). Mr. Rogers failed to make any such challenge at the time of sentencing or on direct appeal . Having failed to establish cause for his failure to raise a lack of specific knowledge that the identity he employed in his offense belonged to another person, Mr. Rogers can only attack his sentence and conviction by proving that he is actually innocent of Count 3.

  **B.**  **Actual Innocence**

Under *Bousley*, the actual innocence exception to the procedural default bar applies when a post-conviction change in the substantive law potentially shows that the petitioner was convicted

for conduct that the law does not criminalize. *Bousley*, 523 U.S. at 623. To establish actual innocence, a petitioner must demonstrate that, "in light of all the evidence . . . it is more likely than not that no reasonable juror would have convicted him." *Schulp v. Delo*, 513 U.S. 298, 327-28 (1995). As the Supreme Court has noted, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. Here, Petitioner cannot demonstrate that, " in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* Therefore, Petitioner is unable to meet the "actual innocence" exception.[5]

To establish a violation of § 1028A(a)(1), "the government must demonstrate that defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in 1028A(c)." *United States v. Hurtado*, 508 F.3d 603, 606-07 (11th Cir. 2007) (per curiam). *Flores-Figueroa* added the additional requirement that the Government demonstrate the defendant knew the means of identification used belonged to another person. *Flores-Figueroa*, 556 U.S. at 657. The Government is not limited to the existing record to rebut Mr. Rogers's challenge to his conviction, and may present "any admissible evidence" of guilt, even if that evidence was not presented during the plea colloquy. *Bousley*, 523 U.S. at 624.

In *Flores-Figueroa*, the Court observed that "in the classic case of identity theft, intent is generally not difficult to prove," citing as an example the situation "where a defendant has used another person's identification number to get access to that person's bank account." *Flores-Figueroa*, 556 U.S. at 656, 129 S.Ct. at 1893. In the instant case, Petitioner manufactured

---

[5] It has been noted that "[a]ctual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by Appellant's failure timely to file his § 2255 motion." *Echevarria v. United States*, 688 F.Supp.2d 805, 812 (E.D. IL. 2010) (quoting *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005).

counterfeit commercial checks purportedly drawn on accounts held by Grossman Iron and Steel, a buyer and processor of scrap iron and steel in St. Louis, Missouri, at Cass Bank & Trust Company. *United States v. Rogers*, Case No. 3:06-cr-30065, Doc. 12. A majority of the checks produced were issued to an individual by the name of Gregory Adams in varying amounts, but Mr. Rogers also manufactured checks in the names of others. *Id*. The checks contained personal identification numbers and financial institution account and routing numbers for Grossman Iron and Steel. *Id*. Mr. Rogers also obtained personal identification numbers from the individuals cashing the checks on his behalf, and in return these individuals kept approximately $50 from the proceeds of the negotiated check with the remaining sum returned to Mr. Rogers. *Id*. Therefore, Mr. Rogers employed means of identification belonging not only to Grossman Iron and Steel, but also to Gregory Adams and others cashing checks on his behalf.

With regard to Grossman Iron and Steel, Mr. Rogers does not submit that a corporation does not qualify as a "person" under Section 1028A(a)(1). The Supreme Court in *Flores-Figueroa* did not purport to define the meaning of the term "person" as used in the statute. *See*, *e.g*., *United States v. LaFaive*, 618 F.3d 613, 618 (7th Cir. 2010); *United States v. Maciel-Alcala*, 612 F.3d 1092, 1099 (9th Cir. 2010), *cert. denied* 131 S.Ct. 673 (2010) (holding Section 1028A covers the identity of both living and deceased persons). Moreover, as this Circuit has observed:

> Congress' purpose in enacting the statute was not only to prevent harm to living victims, but also to "protect businesses from financial loss and the nation from terrorist threats." Moreover, theft of a deceased person's identification is not a "victimless crime." As noted earlier, the plain language of § 1028A shows that Congress intended the statute to have broad coverage, and our conclusion that "person" includes both the living and deceased comports with that intention.

*LaFaive*, 618 F.3d at 618 (quoting *Maciel-Alcala*, 612 F.3d at 1100-01). "*Flores-Figueroa* does not by itself, therefore, preclude the application of the term 'person' in § 1028A to legal 'persons' such

as corporations." *United States v. Mellor*, 2010 WL 3585892 at *5 (W.D. Va. 2010) *appeal dismissed*, 409 Fed. Appx. 705 (4th Cir. 2011) (unpublished); *See also United States v. Hilton*, 2010 WL 2926055, slip op., at *3 (W.D.N.C. 2010) (holding § 1028A "criminalizes the unlawful use of the means of identification of another person, regardless of whether the stolen identification is of a natural or a corporate person."). Therefore, Grossman Iron and Steel constitutes a "person" under Section 1028A. Moreover, Mr. Rogers obtained and used personal identification numbers belonging to Gregory Adams and other individuals who cashed checks on his behalf, also qualifying "persons" under Section 1028A. *See generally United States v. Hines*, 472 F.3d 1038 (8th Cir. 2007) *cert. denied*, 552 U.S. 900 (2007) (holding use of another person's social security number to commit a qualifying felony, even with that person's permission, served as use "without lawful authority" in violation of Section 1028A(a)(1)); *United States v. Retana*, 641 F.3d 272, 274 (holding statute is not limited to situations of "actual stealing" where offender had no authority from "victim" to use the means of identification).

     Mr. Rogers is unable to establish he believed the identities he employed were "purely fabricated." See *United States v. Retana*, 641 F.3d 272, 275 (8th Cir. 2011) ("Accordingly, to prove the offense of aggravated identity theft, the government had to prove that the defendant knew the means of identification was associated with an actual person rather than being purely fabricated."). From the record it is clear that Mr. Rogers, by his conduct, has satisfied each elements of 18 U.S.C. § 1028A in that Mr. Rogers: (1) knowingly transferred, possessed, or used; (2) means of identification he *knew* to belong to other persons; (3) without lawful authority; (4) during and in relation to a felony enumerated in 1028A(c). In committing bank fraud, a felony enumerated in 1028A(c), Mr. Rogers knowingly used personal identification numbers he knew to belong to Grossman Iron and Steel, Gregory Adams and others without lawful authority. Therefore, Mr.

Rogers is unable to demonstrate he is actually innocent of aggravated identity theft.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus (Doc. 1) is **DENIED**, and this action is **DISMISSED** with prejudice. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: October 2, 2012

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge